**IT IS ORDERED as set forth below:**



Date: September 21, 2021

_____
Susan D. Barrett
United States Bankruptcy Judge
Southern District of Georgia

---

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE

SOUTHERN DISTRICT OF GEORGIA
Augusta Division

| | | |
|---|---|---|
| IN RE:<br>LATASHA RENA HUFF, | ) ) ) | Chapter 7 Case<br>No. <u>19-10107</u> |
|       Debtor | ) ) | |
| LATASHA RENA HUFF, | ) ) | Adversary Proceeding |
|       Plaintiff | ) ) ) | No. <u>20-01001</u> |
| v. | ) ) | |
| NAVIENT SOLUTIONS, LLC,<br>NATIONAL COLLEGIATE STUDENT LOAN<br>TRUST,<br>NAVIENT PC TRUST,<br>SLM BANK, and<br>U.S. DEPARTMENT OF EDUCATION<br>SERVICES, | ) ) ) ) ) ) ) ) | |
|       Defendants | ) ) | |

AO 72A

(Rev. 8/82)

## OPINION AND ORDER

Before the Court is a Motion for Summary Judgment filed by National Collegiate Student Loan Trust ("NCSLT") seeking a determination that the student loans of Latasha Rena Huff ("Debtor") are not dischargeable pursuant to §523(a)(8).[1] Debtor contends there are material facts in dispute and therefore summary judgment is not appropriate. This is a core proceeding under 28 U.S.C. §157(b)(2)(I) and the Court has jurisdiction pursuant to 28 U.S.C. §1334. For the following reasons, NCSLT's Motion for Summary Judgment is denied.

## UNDISPTUED FACTS

NCSLT seeks summary judgment based upon the following facts:[2]

1. [Debtor] was born in 1979. See Exhibit A (Huff Depo. Transcript, [22:5-22:6]).[3]

2. She lives at 3522 Jamaica Drive, Augusta, Georgia. Id. at [10:17-10:20].

3. She has two children ages 8 and 3 who live with her full

---

[1] Unless otherwise noted all statutory references refer to Title 11 of the United States Code.

[2] The following recitation of the facts is from NCSLT's undisputed facts. Dckt. No. 82. The referenced exhibits are attached to NCSLT's Motion for Summary Judgment. Dckt. No. 81.

[3] The Court has made stylistic amendments to the pinpoint citations to the transcript.

time. Id. at 13:14-14:6.

4. The children['s] father, [Alan] Sheppard, does not live with them. Id. at 89:12-90:1. He provides some parenting support, but does not provide any financial support. Id. at 15:2-15:22.

5. Debtor has a 14-year-old godson who lives with her on and off. He does not increase Debtor's expenses when living with her. Id. at 88:13-89:8.

6. Debtor also has two adult nieces living with her. Neither adds costs to Debtor's monthly expenses. Id., see also 53:10-53:16.

7. Debtor is employed by the Richmond County Board of Education as a sixth-grade math and social studies teacher at [Langford] Middle School. Id. at 23:1-23:15.

8. Debtor has been employed by Richmond County Board of Education for six-years. Id.

9. Debtor holds a Bachelors of Science in Business Administration from Paine College (2002) and a Masters in Human Resources from Troy University (2004). Debtor also holds a Masters of Education, a Specialist in Leadership, and a PhD in Educational Leadership from North Central University (acquired between 2013-2020). See Exhibit B (Response to Interrogatory No. 16)

10. Debtor began teaching in 2008. See Exhibit A, at 45:4.

11. She has been consistently employed since graduating undergraduate college in 2002. Id. at 43:1-43:18; 45:4.

12. Neither [D]ebtor, nor any of her dependents, have any physical or mental disabilities. Id. at 88:8-88:10.

13. Debtor aspires to be, qualifies to be, and regularly applies to be an assistant principal or principal. Id. at 47:4-47:21.

AO 72A

(Rev. 8/82)

14. A principal in the Richmond County Board of Education can make in the range of $80,000 to $100,000 in present day dollars. Id. at 51:19-52:2.

15. Debtor is confident she will become a principal or assistant principal, stating at her deposition that "It's coming." Id. at 73:9-73:13.

16. Since September 2019, Debtor has contractual monthly earnings of $4,499.25. Id. at 61:12-61:21; see also Exhibit C (pay stubs).

17. Debtor has earned an additional $112.50 per month during that time. Id.

18. After taxes and deductions, her net take home pay during that five-month period (the most recent period produced by [D]ebtor) was $3,496.80 per month. Id.

19. Debtor is paid monthly. Id.

20. Debtor occasionally earns additional money for teaching [summer] school or doing various promotional activities. See Exhibit A, 93:14-95:8.

21. Debtor's rent is $1,000 per month. Exhibit B (Response to Interrogatory No. 21).

22. Debtor spends $1,920 per month on maintenance, electric and heat, water, internet/cable/cell, food and housekeeping, child-care, clothing, personal care, and gas. Id.

23. Debtor claims to pay $290 per month for auto insurance. Id. However, at her deposition, Debtor admitted one of the vehicles on her policy has been dropped (and not replaced) and another vehicle is reimbursed [to her] by her niece. Exhibit A, 54:7-57:18; see also Exhibit D (State Farm invoice).

24. Accordingly, the only vehicle she is paying to insure is her Suburban, which costs $100 per month to insure. Id.

25. Debtor claims to pay $485 per month for her 2014 Chevrolet Traverse, the only vehicle she uses. Exhibit B, Response to Interrogatory No. 21.

26. Per the Retail Installment Sale Contract file[d] by Santander Consumer USA, the final payment is due March 2023. Exhibit E (Proof of Claim) No. 5.

27. According to her Bankruptcy Schedule, the monthly payment is $376. Exhibit F (Sched. J) Part 2, line 17b.

28. Debtor claims $290 per month for payment on a Camaro. Exhibit B, Response to Interrogatory No. 21.

29. However, at her deposition, [D]ebtor conceded the Camaro is no longer an expense. See Exhibit A, 57:3-57:10.

30. Debtor has paid for non-relative Alan Sheppard's car, insurance, and has occasionally given him cash. Id. at 54:7-54:22; 96:2-96:6, see Exhibit G (Credit Union Statement (entries highlighted)).

31. Accordingly, [D]ebtor's monthly expenses are approximately $3,396. Compare ¶¶ 21-24 above.

32. Debtor incurred 5 loans to NCSLT between 2006-2007. See Exhibit H (Declaration of B. Luke) ¶¶ 10-12.

33. All of the loans are now in default and have a cumulative balance of at least $145,711.32 as of the filing of the Adversary Proceeding. Id.

34. Debtor does not dispute owing the loans. Exhibit F, Sched E/F, 4.21; Exhibit A, 34:1-39:8.

35. The loans were education loans to be used only for the cost of attendance and are non-dischargeable under Bankruptcy Code [§]523(a)(8) because (a) the loans were made pursuant to a program funded in whole or in part by The Education Resources Institute, Inc. ("TERI"), a non-profit institution, and (b) this

is a qualified education loan as defined in the Internal Revenue Code. <u>See</u> Exhibit H, ¶¶ 13.

36. Debtor has not made any payments [towards] her loans through the Department of Education because she expects them to be forgiven pursuant to a public service plan. <u>See</u> Exhibit A, 48:5-49:12; 77:10-77:19.

37. Prior to attending North Central University and entering the field of education, Debtor did not make any payments on her loans from the Department of Education for attendance at Paine College. <u>Id.</u> at 27:11-27:20.

38. Debtor made 6 payments prior to default for a total of $478 on the 5 loans owed to NCSLT. <u>See</u> Exhibit H, ¶¶ 10-12.

39. Debtor made some additional payments after collection lawsuits were filed and/or reduced to judgment. <u>Id.</u>

40. Debtor admits she can make payments towards her NCSLT loans given her current situation and without a reduction in expenses. Exhibit A, 71:20-72:3.

NCSLT's Statement of Undisputed Material Facts, Dckt. No. 82.

In her response, Debtor states, "[NCSLT] lists Debtor's monthly expenses in the statement of undisputed facts, but fails to mention that Debtor has been placed in charge of on and off care of a niece and nephew, therefore, Debtor's expenses are relatively inconsistent." Dckt. No. 93, Ex. 1, ¶1. In her response, Debtor provides her current expenses in the following chart:

Rent $1,000.00
Food $770.00
House Keeping Supplies $80.00
Clothing and Services $150.00

AO 72A

(Rev. 8/82)

Personal Care Products $75.00
Electricity $275.00
Water $150.00
Telephone Internet $250.00
Insurance $100.00
Transportation $150.00
Car Payment - taken out of Paycheck $452.78 (not included
in Total)
TOTAL $3,000.00.

Dckt. No. 93, Ex. 1, ¶2 (citing to Exhibit 1-C to Affidavit of Debtor). As for Debtor's income, her current base annual salary (without the additional supplements) is $56,214.00. Dckt. No. 93, Ex. 1, ¶9. Debtor avers her net monthly income is $3,076.33. Dckt. No. 93, Huff Aff. Ex. 2, ¶14. Taking Debtor's expenses of $3,000.00 from her income of $3,076.33, Debtor has approximately $76.33 of excess monthly income.

## CONCLUSIONS OF LAW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[A] party seeking summary judgment always bears the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers

to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323 (internal quotations omitted). Once the moving party has properly supported its motion with such evidence, the party opposing the motion "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); First Nat'l Bank of Arizona v. Cities Servs. Co., 391 U.S. 253, 288-89 (1968); Fed. R. Civ. P. 56(e). "In determining whether the movant has met its burden, the reviewing court must examine the evidence in a light most favorable to the opponent of the motion. All reasonable doubts and inferences should be resolved in favor of the opponent." Amey, Inc. v. Gulf Abstract & Title, Inc., 758 F.2d 1486, 1502 (11th Cir. 1985)(citations omitted).

## §523(a)(8).

To discharge her student loan pursuant to §523(a)(8) Debtor must show repayment of the loan would be an "undue hardship." 11 U.S.C. §523(a)(8). The Eleventh Circuit has adopted the Brunner test to determine whether repayment of the student loan debt constitutes an "undue hardship." In re Cox, 338 F.3d 1238, 1241-

AO 72A
(Rev. 8/82)

42 (11th Cir. 2003) (citing <u>Brunner v. New York State Higher Educ.</u> <u>Servs. Corp.</u>, 831 F.2d 395 (2d Cir. 1987)).   The Brunner test requires Debtor to establish by a preponderance of the evidence each of the following factors to discharge her student loan:

(1)   That the debtor cannot maintain, based on current income and living expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loan;

(2)   That additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loan; and

(3)   That the debtor had made good faith efforts to repay the loan.

<u>In re Acosta-Conniff</u>, 686 F. App'x 647, 648 (11th Cir. April 19, 2017) citing <u>Brunner</u>, 831 F.2d at 396.   "The first prong focuses on the current ability of the debtor to repay the debt.   The second prong looks to the future to determine the unlikelihood that the debtor could become able to repay the loan.   The third prong looks to the debtor's past conduct to determine whether her actions in the past have manifested a good faith effort to repay that which she owes."   <u>In re Acosta-Conniff</u>, 686 F. App'x at 649.

The issue of whether the repayment of the student loan would impose an undue hardship is a mixed question of law and fact. <u>In re Mosley</u>, 494 F.3d 1320, 1324 (11th Cir. 2007) citing <u>In re</u> <u>Frushour</u>, 433 F.3d 393, 398 (4th Cir. 2005).   Because Debtor carries

AO 72A

(Rev. 8/82)

the burden of proving each element of the Brunner test, NCSLT only needs to show that the undisputed facts preclude Debtor from satisfying just one of the prongs of the Brunner test.  In re Kidd, 2012 WL 1820816, at *3 (Bankr. N.D. Ga. April 2, 2012)(granting summary judgment where defendants showed the undisputed facts precluded the debtors from prevailing under the prongs of the Brunner test).

### Minimal Standard of Living.

The first prong of the Brunner test requires Debtor to show she cannot maintain a minimum standard of living if required to repay her student loan.  In re Mosley, 494 F.3d at 1324.  This prong "does not require the debtor to live in abject poverty, but it does require more than a showing of tight finances."  In re McLaney, 375 B.R. 666,674 (M.D. Ala. 2007).  To prevail at trial, Debtor must show paying the student loan debt would not allow her sufficient income to provide for basic needs such as food, shelter, utilities, personal hygiene products, and some entertainment or recreation.  In re Williams, 492 B.R. 79, 85 (Bankr. M.D. Ga. 2013).

At this stage in the proceedings, there are material facts in dispute precluding summary judgment.  First, it is unclear whether Debtor's nieces and godson increase her expenses.  Debtor testified in her deposition they do not increase her expenses;

AO 72A

(Rev. 8/82)

however, Debtor is providing them food and shelter and in her reply brief, she contends her expenses fluctuate due to their care. Dckt. No. 93.

Furthermore, at this stage in the proceedings, it is unclear what the monthly student loan payment and period for NCSLT would be. The Debtor stated in her deposition that the monthly NCSLT expense was more than $1,000.00. However, NCSLT indicates a lower monthly payment option may be available. In her deposition, Debtor admitted she could pay $70-$100/month on these loans and additional funds may be available in her budget. At this point, material facts are in dispute and summary judgment is not appropriate.

**Additional Circumstances Show the Inability to Pay Will Persist.**

Under the second prong of the Brunner test, Debtor must demonstrate additional circumstances show her inability to pay the student loan is likely to persist for a significant portion of the repayment period. In re Mosley, 494 F.3d 1320, 1326 (11th Cir. 2007). "Under Brunner, undue hardship does not exist simply because the debtor presently is unable to repay his or her student loans; the inability to pay must be 'likely to continue for a significant time'. . . such that there is a 'certainty of hopelessness' that the debtor will be able to repay the loans within

the repayment period." Id. "Additional circumstances" include a debtor's physical and mental disability, lack of usable or marketable job skills and lack of assets available to pay the loan. Id. at 1326-27.

In this case, Debtor has marketable and usable job skills. She is in her early forties and in good health which are positive factors weighing in favor of nondischargeability. Debtor has remained gainfully employed as an educator for years and plans to work for at least another 18 years. Debtor is qualified for and has applied for principal and assistant principal positions which would increase her pay. While her job search for these positions has yet to be successful, she remains optimistic about these prospects.

However, as previously discussed, because the repayment period, amount and options remain unclear, at this stage in the proceedings a genuine issue of fact remains whether Debtor's inability to pay will persist over the repayment period and therefore, NCSLT is not entitled to summary judgment as to this second prong of the Brunner test. See In re Manigualt, 2020 WL 4939170, *4 (Bankr. N.D. Ga. August 24, 2020)(delineation of a repayment period and monthly payment is critical to the second prong of the Brunner test).

Good Faith.

As to the final prong of the Brunner test, Debtor must show she has made a good faith effort to repay her student loan. "Good faith is measured by the debtor's efforts to obtain employment, maximize income, and minimize expenses; his default should result, not from his choices, but from factors beyond his reasonable control." Mosley, 494 F.3d at 1327. At this point in the proceedings, upon review of the undisputed facts in the light most favorable to Debtor, the Court finds NCSLT has not shown it is entitled to summary judgment.

NCSLT argues Debtor has maintained full time employment for lengthy periods of time but has only made a few voluntary payments on her loans thereby demonstrating her lack of good faith. Debtor counters that the repayment amount has been and remains too much for her to pay on her salary and that is why she has not made any substantial repayments on her student loans. A debtor's "failure to make a payment, standing alone, does not establish a lack of good faith." In re Mosley, 494 F.3d at 1327. At this stage in the proceeding, it is unclear whether Debtor has failed to satisfy the good faith element of the Brunner test. For this reason, NCSLT is not entitled to summary judgment on the final prong of the Brunner test.

<u>Conclusion</u>.

For these reasons, examining the evidence in the light most favorable to Debtor, the Court finds NCSLT has not established it is entitled to judgment as a matter of law and therefore, its Motion for Summary Judgment is ORDERED DENIED.

[END OF DOCUMENT]